A92A2209. CROSSON et al. v. LANCASTER et al.
(427 SE2d 864)

BEASLEY, Judge.

Allen and Darlene Crosson sued Trust Company Bank of Carroll County and its loan officer, John Lancaster, for damages stemming from Lancaster's action on behalf of the bank accelerating seven loans. Summary judgment was granted to the bank and Lancaster.

The Crossons, who are farmers, had a longstanding relationship with the bank. On January 5, 1990, Lancaster sent them a letter informing them that the bank was closing their checking account because it had been overdrawn by $5.60 for 66 days, and that because they had sold collateral "out of trust" the bank was requesting that they pay all outstanding balances on the loans, totaling $116,111.63, by the end of the month. The collateral referred to was certain hogs securing one loan in a common arrangement whereby sale of the hogs would provide the proceeds to pay off that loan.

The Crossons alleged in their complaint that after receiving the letter, they sold various animals and equipment quickly and at less than fair market value and borrowed money in order to pay off all the loans. The gravamen of their action is that the bank's stated reason for accelerating their loans was pretextual, and that the bank's actions were wrongful and taken in bad faith. Our courts have recognized such an action. *Mayo v. Bank of Carroll County*, 157 Ga. App. 148 (1) (276 SE2d 660) (1981).

In this appeal, the Crossons contend the trial court erroneously granted the bank's motion for summary judgment because at least four genuine issues of material fact remain.

1. The first is whether the bank met the requirement of good faith imposed by OCGA § 11-1-203: "Every contract or duty within

this title imposes an obligation of good faith in its performance or enforcement." This means that " 'what is not regulated by the contract should be done in such a way as to show good faith in the carrying out of what is expressed.' [Cit.]" *Fulton Nat. Bank v. Willis Denney Ford*, 154 Ga. App. 846, 848-849 (269 SE2d 916) (1980). The bank's action was covered by the contract, so OCGA § 11-1-203 is inapplicable. See id.

2. Second, even if we were to assume that an issue of fact existed regarding whether the bank had waived the Crossons' technical default by its prior acceptance of late payments, see *Baxter v. Ga. Fed. &c. Assn.*, 152 Ga. App. 753-754 (1) (264 SE2d 242) (1979), it is not a *material* issue of fact. The bank does not claim that its decision to accelerate was precipitated by a default in payment, but by occurrences leading the bank to deem itself insecure.

3. The Crossons contend that in addition to the bank's obligations under the contract and those imposed by the U.C.C., it had a common-law duty to act with ordinary care before accelerating, and a material question of fact remains whether the bank breached that duty.

A common-law tort action based on negligence may sometimes lie even where the transaction is one governed by the U.C.C., because the U.C.C. does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction. *First Ga. Bank v. Webster*, 168 Ga. App. 307, 308-309 (1) (308 SE2d 579) (1983). However, the bank's duty when it accelerates because of its insecurity, as permitted by the note, is expressly stated by the U.C.C. It may do so "only if [it] in good faith believes that the prospect of payment or performance is impaired." OCGA § 11-1-208.

Compliance with the requirements of the statute is fulfillment of the duty owed. Permitting an action in negligence despite the bank's showing that it met the statutory requirement by acting in good faith would, in this instance, " 'thwart the purposes of the Code[,]' " *Webster*, supra at 308 (1), by rendering this section meaningless.

4. The Crossons contend a fourth material issue of fact is whether the bank met the good faith requirement of OCGA § 11-1-208. All the notes in issue contained provisions entitling the holder to accelerate upon the happening of any circumstance leading it to deem itself insecure. OCGA § 11-1-208 provides that such a term "shall be construed to mean that [the holder] shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised." OCGA § 11-1-201 (19) defines "good faith" as "honesty in fact in the conduct or transaction concerned."

On motion for summary judgment, the burden is on the movant

to establish the absence of any material issue of fact. *Barber v. Threlkeld Ford*, 199 Ga. App. 787, 788 (406 SE2d 249) (1991). The material issue here "is not whether the loan was in fact insecure, but whether, in determining the loan insecure, the bank acted honestly, in good faith, and not arbitrarily or capriciously." *Ginn v. Citizens &c. Nat. Bank*, 145 Ga. App. 175, 177 (1) (243 SE2d 528) (1978). Some of the notes expressly refer to "a reasonable belief" of insecurity.

In support of its motion, the bank proffered the affidavit of Lancaster, showing that the Crossons' financial position had worsened and that bank auditors had expressed concerns regarding the "significant degree of risk of non-performance . . . manifested" by the Crosson loans. Lancaster averred that after the Crossons had renewed a loan in December 1989, he came to believe that a significant number of hogs used as collateral for the loan had been sold "out of trust" and that when asked, Allen Crosson had informed him he did not know the whereabouts of the collateral or the proceeds. Lancaster also averred that the bank's determination that it was insecure had been based on several factors: In addition to the Crossons' worsening financial status and possible sale of collateral "out of trust," they had exceeded their debt limit, had consistently failed to make loan payments on time, and had a negative balance in one of their checking accounts. Lancaster also averred that at all times he had acted in good faith in this matter.

In opposition to the motion for summary judgment, Crosson relied on the acceleration letter, pointing out that although Lancaster averred that the bank's determination that it felt insecure had been based on several factors, it is undisputed that the acceleration letter clearly stated the action was being taken because of sale of hogs out of trust. In addition, Crosson proffered his own deposition testimony indicating that the bank's loan officer who took charge of the loan renewal allowed him to reduce the number of hogs used as collateral because he had paid down significantly the amount of the note. The deposition testimony of Susan Patterson, the loan officer who wrote up the renewal, supports Crosson's testimony on this issue. Crosson also disputed Lancaster's account of the telephone call regarding the whereabouts of the proceeds of the sale of the hogs, testifying that Lancaster had not given him a chance to explain the reduced number of hogs, and disputing that he told Lancaster he did not know the whereabouts of the proceeds of the sale.

Apart from these conflicts in the evidence, tending to show that Lancaster was at least mistaken about an important factual predicate for the letter, the deposition of Jimmy Meigs, an officer of the bank and Lancaster's superior, places Lancaster's good faith in issue by suggesting that Lancaster acted without first checking the facts. Meigs testified that he would not have sent the letter; that even after

the letter was sent the bank's intention was merely to have the Crossons bring their payments current rather than calling the loans; that the Crossons had been "outstanding" customers; and that occasional late loan payments and checking account overdrafts were common with farming customers.

Meigs also deposed that Lancaster came to him before the letter was sent and reported his belief that the hogs had been sold "out of trust," and that he, as Lancaster's superior, had told Lancaster that he "just thought we [the bank] should research it and check to see what the problem was if that were the case." Meigs also testified that after the fact he had checked with Patterson, and had concluded that Crosson had given an adequate explanation for the reduced hog collateral.

"The party moving for summary judgment has the burden of establishing the non-existence of any genuine issue of fact, and all doubts must be resolved in favor of the non-moving party. [Cit.]" *Northside Bldg. Supply Co. v. Foures*, 201 Ga. App. 259 (411 SE2d 87) (1991). Viewing the evidence in this manner, it is apparent that the bank has not established that there is absent any evidence that it did not act in good faith. See *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991). Rather, the evidence conflicts in several important respects on the material issue of whether Lancaster's actions in deeming the bank insecure and calling the loans may have been arbitrary and capricious, not founded on a "reasonable belief," rather than taken in good faith as required by OCGA § 11-1-208. Under these circumstances, " '[g]ood faith . . . is always a question for the jury. Even though the party may swear he acted in good faith, the jury may decide he acted in bad faith from consideration of facts and circumstances in the case.' [Cit.]" *Ginn*, supra. Compare *First Bank of Savannah v. Kilpatrick-Smith Constr. Co.*, 153 Ga. App. 112 (264 SE2d 576) (1980); *Custom Panel v. Bank of Hampton*, 143 Ga. App. 681 (239 SE2d 558) (1977). Because this material issue of fact exists, the trial court erroneously granted summary judgment to the bank and its officer Lancaster.

*Judgment reversed. Carley, P. J., and Andrews, J., concur. Birdsong, P. J., disqualified.*

DECIDED FEBRUARY 19, 1993.

*Perkins & Perkins, Clifford Perkins*, for appellants.
*Price & Pyles, Sammy D. Price, Kurt M. Thomas,* for appellees.