A94A0918. FULTON v. ANCHOR SAVINGS BANK, FSB et al.
(452 SE2d 208)

McMURRAY, Presiding Judge.

Carrie B. Fulton (plaintiff) filed a multi-count complaint and an amended complaint against Anchor Savings Bank, FSB ("Anchor Bank"), Omni Recovery Services, Inc. ("Omni"), Southern States Vehicle Auction of Atlanta, Inc. ("Southern States") and James L.

Carter (defendants) for the alleged wrongful repossession of her automobile. Defendants denied the material allegations of the complaint and the parties filed opposing motions for summary judgment. The evidence, construed in a light which most favorably supports plaintiff's claims, reveals the following:

On June 28, 1986, plaintiff financed and purchased a new car through an automobile dealership and committed the vehicle as collateral under a retail installment contract ("the loan agreement") assigned to Anchor Bank. The loan agreement calls for sixty consecutive monthly installments in the amount of $366.19, prescribes a late charge of five percent on any payment more than ten days overdue, prohibits plaintiff from moving the collateral without the lender's prior written consent and requires plaintiff to insure the vehicle "with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to [the lender], endorsed to protect [the lender] with a licensed insurance company." The loan agreement also provides that "[the lender] can waive or delay enforcing any of [its] rights without losing them."

Plaintiff tendered all 60 monthly payments as required under the loan agreement and maintained the required comprehensive, fire, theft and collision coverage on the vehicle during the entire life of the loan. The only time plaintiff tendered a monthly payment beyond the ten-day grace period prescribed in the loan agreement was in the early part of 1989 when Anchor Bank closed its Marietta Street office (where plaintiff hand-delivered her payments) and posted an inaccurate address for customers to mail loan payments. This confusion was clarified and plaintiff thereafter posted her monthly payments to an address in Chamblee, Georgia, as she was directed by an agent for Anchor Bank.

In December 1988, plaintiff notified a teller at Anchor Bank's Marietta Street office that she changed her residence on November 22, 1988, from the address designated on the loan agreement to an address in Atlanta, Georgia. The teller responded by (apparently) entering plaintiff's new address into Anchor Bank's computer records. However, the teller did not give plaintiff written authorization to move the collateral as required by the loan agreement and Anchor Bank never forwarded such authorization to plaintiff.

Anchor Bank posted a form notice, dated March 16, 1989, to the address listed on the loan agreement reminding plaintiff of the need for insurance covering the collateral and warning plaintiff that failure to confirm the existence of such insurance within 15 days of the date of the notice would result in procurement of a policy covering Anchor Bank's interest in the vehicle ("forced placed policy") at plaintiff's expense. Plaintiff never received this notice as she no longer resided at the address provided on the loan agreement. As a consequence,

Anchor Bank purchased a forced placed policy covering its interest in the vehicle from February 11, 1989 to February 11, 1990, and charged the premium cost ($1,284) to plaintiff's loan account.

In December 1989, plaintiff's insurance carrier settled a claim for damage to the plaintiff's vehicle and issued a check in the amount of $1,358.77 to plaintiff and Anchor Bank as loss-payees. Both plaintiff and Anchor Bank endorsed the insurance check and tendered it to the automobile dealership where plaintiff's car was repaired. Despite this proof of insurance, Anchor Bank purchased another forced placed policy covering the vehicle from February 11, 1990 to February 11, 1991, and charged the premium to plaintiff's loan account, bringing the total balance for the forced placed insurance to $2,378. However, Anchor Bank did not demand reimbursement of the cost of these policies immediately. It waited until after plaintiff paid off her loan in July 1991.

Anchor Bank posted correspondence, dated August 14, 1991, to plaintiff's former address demanding either proof that the vehicle was insured during the terms of the forced placed policies (between February 11, 1989 and February 11, 1991) or payment of the premiums paid for the forced placed policies. This letter required a response within 15 days from the date on the letter and included Anchor Bank's promise that proof of such insurance would result in a credit to plaintiff's loan account for the full cost of the forced placed insurance. Plaintiff never received this notice.

On September 13, 1991, Anchor Bank posted a notice to the address listed on the loan agreement demanding payment of amounts which appear to reflect the cost of the forced placed insurance. On September 16, 1991, Anchor Bank posted another notice to the address listed on the loan agreement demanding payment of an amount which appears to reflect the cost of the forced placed policies, plus a $73.20 late charge Anchor Bank claims plaintiff owes as a result of a delinquent payment during the term of the loan. A third notice demanding immediate payment of the same amount was mailed to plaintiff's former address on September 25, 1991. When plaintiff did not respond to these notices, Anchor Bank contracted for Omni to repossess plaintiff's car. Omni enlisted James L. Carter to carry out the task.

At 5:00 in the morning on October 11, 1991, Carter went with two other men to plaintiff's home in Atlanta to seize the collateral. Plaintiff was (apparently) aroused from sleep by the activities of Carter and his associates and confronted the men outside her home. Plaintiff informed the strangers that they had no right to seize her car and showed Carter proof that she paid the car loan off in July 1991. Carter informed plaintiff that the car was being repossessed for lack of insurance. Plaintiff then showed Carter proof that she maintained

insurance on the vehicle during the entire life of the loan. Nonetheless, Carter refused to leave plaintiff's premises, explaining that it was his job to seize her car.

Plaintiff telephoned for police assistance and attempted to move the vehicle from her driveway and into her garage. However, Carter's associates stepped in front of the garage door, blocking her way. Plaintiff then ordered the men to remove themselves from her path. The strangers complied and warned plaintiff that she would be committing an illegal act if she refused to relinquish control of the car. Plaintiff then heard Carter inform his associates that they would have to remove the car by force, i.e., towing.

A law enforcement officer later arrived on the scene and examined Carter's repossession papers. The officer informed plaintiff that Carter had authority to repossess the car and instructed plaintiff to turn her car keys over to Carter. Plaintiff complied and Carter took possession of the vehicle, delivering it to Southern State's place of business where it was prepared for auction.

Plaintiff contacted Michael Cerase, an agent for Anchor Bank, on the day the car was repossessed and Cerase informed plaintiff that her car would not be returned. That same day, Cerase posted a letter to plaintiff's former address informing plaintiff that her car would be sold at a private sale on October 21, 1991, if she did not pay an amount which appears to reflect the cost of the forced placed insurance plus a $73.20 late charge Anchor Bank claims plaintiff owes as a result of a delinquent payment during the term of the loan. However, this threat was never carried out and plaintiff's car was returned to her by Southern States five days after repossession upon the direction of Anchor Bank. On October 22, 1991, Anchor Bank posted a notice to plaintiff's former address congratulating her "on the successful completion of payments on [her] loan."

The trial court denied plaintiff's motion for summary judgment and granted defendants' motions for summary judgment. This appeal followed. *Held*:

1. Defendants have filed a motion to remand the case sub judice to the trial court, pointing out that a transcript of the summary judgment hearing is not included in the appellate record as requested by plaintiff in her notice of appeal.

In the notice of appeal, plaintiff's attorney directed "[t]he Clerk [of the trial court] to omit nothing from the record on appeal" and augmented this directive via the following handwritten insertion: "The summary judgment hearing transcript should be included." Over two months later, plaintiff's attorney posted (in pertinent part) the following letter to a deputy clerk of the trial court: "Please remit the record on the above-styled case to the Georgia Court of Appeals. There is no transcript to forward with the record in this case." The

clerk of the trial court transmitted "the original Notice of Appeal together with a true copy of those portions of the record required to be transmitted to the Court of Appeals of Georgia. . . ." After the case was docketed in the Court of Appeals, defendants jointly filed a motion to remand the appeal to the trial court, arguing the case sub judice is premature because of plaintiff's failure to have the summary judgment hearing transcript prepared and filed for inclusion in the record on appeal.

Defendants fail to point to any specific evidentiary material or admission adduced at the summary judgment hearing which could have possibly supported or detracted from the trial court's ruling on summary judgment. On the other hand, plaintiff contends no such evidentiary material or admission was adduced during the summary judgment hearing and that argument of counsel was all that was accomplished at the hearing. Our examination of the parties' (multi-faceted) briefs in the case sub judice, the ten-volume record (comprising multiple depositions, affidavits and evidentiary filings) and the trial court clerk's certificate that she complied with plaintiff's directive to omit nothing from the record on appeal indicates that all pertinent material before the trial court upon the parties' opposing motions for summary judgment is now before this court on appeal. Consequently, "[w]e do not consider the transcript necessary to our disposition of this appeal from a grant of summary judgment. If defendant[s] as appellee[s] considered the transcript necessary, [they] could have had it prepared and sent to us . . . , see OCGA §§ 5-6-41 and 5-6-42, or moved to compel plaintiff to do so." *Johnson v. Hardwick*, 212 Ga. App. 44, 46 (4) (441 SE2d 450). Remanding the case sub judice to the trial court would only serve to delay adjudication of plaintiff's appeal. Accordingly, defendants' joint motion to remand is denied.

2. Plaintiff contends the trial court erred in granting defendants' motion for summary judgment, arguing that genuine issues of material fact remain as to her claim for breach of the peace.

(a) "Unless otherwise agreed in the contract between the parties, 'a secured party has on default the right to take possession of the collateral . . . without judicial process . . .' so long as '. . . this can be done without breach of the peace . . .' Code Ann. § 109A-9-503[, now OCGA § 11-9-503]. See *Ford Motor Credit Co. v. Milline*, 137 Ga. App. 585 (224 SE2d 437) (1976). [In the case sub judice, the loan agreement] clearly provided for repossession upon default of any payments (see *Whisenhunt v. Allen Parker Co.*, 119 Ga. App. 813 (4) (168 SE2d 827) (1969)). . . . Thus, [a] primary issue before this court on appeal is whether [Carter and his associates] breached the peace in repossessing [plaintiff's] car such that [defendants] are now liable for damages." *Deavers v. Standridge*, 144 Ga. App. 673, 674 (1) (242 SE2d 331).

" '(I)f collateral, such as a car, is on the streets or in a parking lot, no breach of peace will occur if the secured party takes it without protest or out of the presence of the debtor.' Callaghan, Uniform Commercial Code Series, § 9-503:03, p. 559. [However, the unequivocal oral protest of the defaulting debtor eliminates] self-help repossession [as] a lawful alternative for the secured party. See Callaghan, supra, § 9-503:03 at p. 559. (Of course, whether a protest was made and if so made whether it is unequivocal, generally are questions for jury resolution.) . . . See *Fish v. State*, 124 Ga. 416 (52 SE 737); see also *Williams v. State*, 105 Ga. 608 (31 SE 738); cf. *Deavers [v. Standridge*, 144 Ga. App. 673, 674 (1), 675, supra,] (declining to hold that the jury was unauthorized to find a breach of the peace notwithstanding the evidence 'was not strong')." *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110 (1) (387 SE2d 144).

In the case sub judice, defendants Anchor Bank, Omni and Carter contend there was no breach of the peace because Carter and his associates were polite, unabusive and unprofane at the time of repossession. Defendants Omni and Carter also argue that no breach of the peace occurred because plaintiff voluntarily relinquished her car keys at the time of repossession. These arguments are without merit. It is not the function of this court (or the trial court) to resolve whether the acts of Carter and his associates constituted a breach of the peace. We review only the sufficiency of the evidence. *Hill v. Fed. Employees Credit Union*, 193 Ga. App. 44, 46 (2d) (386 SE2d 874). From this perspective, we find the circumstances of plaintiff's resistance to seizure of her automobile at the time of repossession sufficient to authorize a finding that Carter and his associates breached the peace while repossessing plaintiff's automobile. *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110 (1), supra. The fact that Carter and his associates may have been polite, unabusive and unprofane does not diminish the possibility that a jury may find that defendant Carter and his associates posed an intimidating presence during the early morning encounter with plaintiff and that their refusal to yield to plaintiff's resistance cultivated a hostile environment which could have led to a breach of the peace. Further, it can hardly be said that plaintiff voluntarily relinquished possession of her vehicle at the time of repossession.

While consent to repossession may be a valid defense to a claim of wrongful repossession (Anderson, Uniform Commercial Code, § 9-503:24), such consent must be voluntary and freely given. See Anderson, Uniform Commercial Code, § 9-503:21. In the case sub judice, plaintiff testified that she gave up possession of her vehicle only after a law enforcement officer ordered her to do so. This evidence would authorize a finding that plaintiff did not freely and voluntarily relinquish possession of her car at the time of repossession.

The trial court erred in finding that genuine issues of material fact do not remain as to plaintiff's claim for breach of the peace.

(b) Anchor Bank contends it is not responsible for any breach of the peace, arguing that repossession of plaintiff's car was carried out by independent contractors who were acting outside the scope of its direction and control.

In *Dietrich v. Trust Co. Bank of Augusta*, 179 Ga. App. 330 (346 SE2d 107), this court affirmed the grant of summary judgment in favor of a bank for alleged wrongful repossession, reasoning that the bank was not responsible for any breach of the peace because the agent who seized the automobile was an independent contractor. However, this two-judge decision is physical precedent only and is not binding in the case sub judice. Court of Appeals Rule 35 (b). See *Southern Mut. Ins. Co. v. Mason*, 213 Ga. App. 584, 587, n. 2 (445 SE2d 569).

The general rule that an employer is not ordinarily liable for tortious acts committed by an independent contractor has important exceptions. For example, an employer may generally not delegate the manner of performance of duties imposed by contract, ordinance or statute. OCGA § 51-2-5 (3), (4). See *Wilson & Brother v. White*, 71 Ga. 506, hn. 1a; *Campbell Coal Co. v. White*, 140 Ga. 283 (1) (78 SE 1009). This basic maxim is enunciated in the Restatement of the Law of Torts, Second, § 425 (1965) and was recently enforced in *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771), where this court held that a landlord may not contractually avoid duties imposed by law (relating to the safety of a public elevator) via delegation of those duties to an independent contractor. In *Gaffney*, this court reasoned that public policy forbids such a waiver or release when the duty imposed is " 'one in which the public has an interest. . . .' " *Central of Ga. R. Co. v. Lippman*, 110 Ga. 665, 680 (2) (36 SE 202). *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655, supra.

In the case sub judice, the relevant public policy is found in OCGA § 11-9-503, prohibiting self-help repossession if there is *threat* of violence, injury or intimidation during repossession. *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110 (1), supra. We will not diminish this sound public policy by relieving a repossessing creditor of liability simply because the creditor employs an independent contractor to carry out the task of repossession. This holding is consistent with the view held by the Alabama Supreme Court in *Gen. Finance Corp. v. Smith*, 505 S2d 1045, where a secured creditor was held liable for a breach of the peace committed by an independent contractor employed to carry out a repossession. If we adopted the view of *Dietrich v. Trust Co. Bank of Augusta*, 179 Ga. App. 330, supra, it would unfairly allow creditors to avoid liability for violations

of the uniform prohibition (Uniform Commercial Code, § 9-503) of self-help repossession in cases involving actual or possible breaches of the peace. See *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110 (1), supra.

(c) Omni similarly contends that it is not responsible for any breach of the peace, arguing that Carter and his associates were independent contractors who were acting outside the scope of its direction and control at the time of repossession. This contention is without merit.

Omni stepped in the shoes of Anchor Bank (under the loan agreement and under duties imposed upon a secured creditor by law) when it agreed to repossess plaintiff's automobile. See *Ramey v. Pritchett*, 90 Ga. App. 745, 752 (3), 754 (84 SE2d 305). An employer is liable for the negligence of a contractor "[i]f the wrongful act is the violation of a duty imposed by statute." OCGA § 51-2-5 (4). Consequently, assuming (without deciding) that Carter and his associates were acting on behalf of Omni as independent contractors, Omni will be liable for any damages plaintiff sustained based on a finding that Carter and his associates breached the peace in violation of OCGA § 11-9-503.

The trial court erred in granting summary judgment in favor of defendants Anchor Bank, Omni and Carter as to plaintiff's claim for breach of the peace. However, the trial court did not err in granting summary judgment as to Southern States for breach of the peace as there is no evidence that Southern States was involved in the alleged wrongful repossession.

3. In her second enumeration, plaintiff contends the trial court erred in finding, as a matter of law, that there were bona fide events of default justifying repossession of her automobile.

Repossession is wrongful when the debtor is not in default. *Alexander v. Heritage Corp.*, 175 Ga. App. 55 (332 SE2d 667). "As was held in *Borochoff Properties v. Howard Lumber Co.*, 115 Ga. App. 691, 696 (155 SE2d 651), the Commercial Code does not specifically define a 'default' under a security agreement. 'For the most part, the security agreement itself must define the standards for determining whether a default occurs.' Vol. 1, Secured Transactions under UCC § 8.02." *Whisenhunt v. Allen Parker Co.*, 119 Ga. App. 813, 817 (4), 818, supra. In the case sub judice, the trial court found three separate events of default under the loan agreement authorizing repossession of plaintiff's automobile, i.e., plaintiff was in default for (a) failing to name defendant Anchor Bank as a loss-payee under the motor vehicle liability insurance policies covering the vehicle during the term of the loan, (b) failing to notify defendant Anchor Bank of her change of address during the term of the loan and (c) failing to pay a $73.20 fee which allegedly accrued as a result of a late payment in 1989. Plaintiff

challenges this finding, arguing that genuine issues of material fact remain as to the issue of a bona fide event of default which justified repossession of her vehicle. Plaintiff also argues (under another enumeration of error) that genuine issues of material fact remain as to Anchor Bank's waiver of the loan agreement's anti-waiver provision.

(a) *Failure to Name Anchor Bank as a Loss-Payee.* The loan agreement required plaintiff to insure the vehicle "with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to [the lender], endorsed to protect [the lender] with a licensed insurance company." Although plaintiff complied with this provision by maintaining the required insurance coverage on her vehicle during the entire term of the loan, she failed to have Anchor Bank endorsed as a loss-payee on her policies of insurance. However, it can hardly be said that this omission constituted a bona fide event of default authorizing repossession of plaintiff's car since it is undisputed that Anchor Bank did not base repossession of the collateral on the fact that it was not named as a loss-payee under plaintiff's motor vehicle liability insurance policies. In fact, the record shows that Anchor Bank did not even know it was not named as a loss-payee until after plaintiff instituted this action.[1] It thus follows that Anchor Bank may not defend plaintiff's claim of wrongful repossession on an issue of default it did not rely on as a basis of repossession and which in no way is connected to the cause of repossession. *Crosson v. Lancaster*, 207 Ga. App. 404, 405 (2) (427 SE2d 864). Such a rule is justified on public policy grounds as well as estoppel principles. To say otherwise, would allow creditors to exercise self-help repossession without any real incentive to investigate the basis for repossession (i.e., the existence of a bona fide event of default) and would expose vendees, once in technical default, to perpetual risk of loss of goods via repossession without the benefit of preventive recourse. See *Pierce v. Leasing Intl.*, 142 Ga. App. 371, 372 (2), 373 (235 SE2d 752).

The trial court recognized in its summary judgment order that, in response to an interrogatory soliciting the reason the collateral was repossessed, Anchor Bank responded: " 'Failure to maintain proper insurance on the vehicle. Plaintiff was in default for failure to provide proof of adequate insurance coverage to this defendant, the lien holder.' "[2] These grounds provide no basis (i.e., bona fide events of

---

[1] Anchor Bank would have been justified in believing it was named as a loss-payee under plaintiff's motor vehicle liability insurance policies, at least during the 12-month period the first forced placed policy was in effect, since it is undisputed that plaintiff's insurance carrier named Anchor Bank as a loss-payee in the $1,358.77 settlement check issued by plaintiff's insurance carrier in December 1989.

[2] The trial court also recognized that "Anchor amended its answer to contend that plaintiff was in default at the time of repossession because although she in fact had maintained insurance, her insurance policy did not provide for Anchor to be a lienholder." How-

default) for repossessing plaintiff's vehicle. First, it is undisputed that plaintiff properly insured the vehicle during the entire term of the loan agreement.[3] Second, the loan agreement did not require plaintiff to provide Anchor Bank with proof that the vehicle was insured "with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to [the lender], endorsed to protect [the lender] with a licensed insurance company." Nonetheless, the parties hotly contest (and the trial court resolved) the issue of whether plaintiff informed Anchor Bank of her change of address during the term of the loan agreement. This dispute seems to be the heart of Anchor Bank's defense to plaintiff's claim of wrongful repossession and appears to be a valid condition of default under the provision in the loan agreement requiring plaintiff not to remove the collateral from the address listed on the loan agreement without the lender's prior written consent. The trial court erred in finding that plaintiff's failure to name Anchor Bank as a loss-payee was a bona fide event of default justifying repossession of the collateral.

(b) *Change of Address.* The loan agreement provides that plaintiff is not to remove the collateral from the address listed on the loan agreement without the lender's prior written consent. We read this provision (as did the trial court and the parties) to mean that plaintiff must inform the lender of any change of address during the term of the loan agreement. It follows that, upon such notice of plaintiff's change of address without prior written consent, the lender would have the option of acting on the default by repossessing the collateral or providing written consent for plaintiff to move the collateral from the address listed in the loan agreement. A third option is the lender's acquiescence via failure to respond to plaintiff's notice that the collateral has been (or is going to be) relocated. Such acquiescence may amount to a waiver of the loan agreement's "prior written consent" and anti-waiver provisions. A jury is authorized to find such waivers when there is proof that a lender knowingly accepted the risk caused by the default and failed to insist on strict adherence to the terms of the security agreement. *Pierce v. Leasing Intl.*, 142 Ga. App. 371, 372 (2), 373, supra; *Smith v. Gen. Finance Corp. of Ga.*, 150 Ga. App. 269

---

ever, Anchor Bank offers neither proof nor allegation that plaintiff's failure to name it as a loss-payee was actually a basis for its order to repossess plaintiff's vehicle. On the contrary, the evidence shows that Anchor Bank ordered repossession of plaintiff's car because plaintiff failed to respond to Anchor Bank's demand letters of August and September 1991.

[3] This undisputed fact renders it unnecessary for this court to address plaintiff's argument that the loan agreement did not create a lien against the collateral for the alleged debt which arose as a result of the forced placed insurance. However, we note that the loan agreement clearly provides for maintenance of insurance as a condition of default warranting repossession and acceleration of the underlying debt. The loan agreement also provides that plaintiff will be responsible for the cost of any necessary forced placed insurance.

(257 SE2d 302). It thus follows that the question of waiver in the case sub judice is directly linked to the issue of whether plaintiff properly notified Anchor Bank when she changed her address in November 1988.

" 'On summary judgment, movant has the burden of showing the nonexistence of any material fact and that (it) is entitled to a judgment as a matter of law. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence *and all inferences and conclusions* arising therefrom most favorably toward the party opposing the motion.' (Emphasis in opinion.) (Citations and punctuation omitted.) *Sunamerica Financial v. Peachtree Street, Inc.*, 202 Ga. App. 790, 793 (2) (a) (415 SE2d 677) (1992)." *Pitts v. Bank South Corp.*, 209 Ga. App. 124, 125 (433 SE2d 96). In the case sub judice, plaintiff testified that she informed a teller at Anchor Bank of her change of address within two weeks after moving her residence from the address listed on the loan agreement and that the teller (apparently) entered this information on Anchor Bank's computer records. Plaintiff also testified that she posted her payments to Anchor Bank's agent in Chamblee using envelopes bearing her new home address; that she gave her new address to an Anchor Bank telephone attendant via a long distance telephone call to New York during the early part of 1989 (after Anchor Bank closed banking operations in Georgia) and that Anchor Bank mailed an interest statement to her new address in the early part of 1989 in response to plaintiff's request for information necessary for preparing her 1988 federal income tax return. This testimony and other evidence raises genuine issues of material fact as to whether plaintiff properly notified Anchor Bank of her change of address and whether Anchor Bank acquiesced to plaintiff's relocation of the collateral, thereby waiving the loan agreement's anti-waiver provision. *Smith v. Gen. Finance Corp. of Ga.*, 150 Ga. App. 269, supra. See Anderson, Uniform Commercial Code, § 9-503:14.

(c) *Late Payment.* The loan agreement prescribes a five percent late charge on any payment more than ten days overdue. Although Anchor Bank now contends breach of this provision (i.e., plaintiff's failure to pay the $73.20 late fee) was a bona fide event of default justifying repossession of the collateral, Anchor Bank neither alleges nor proves that this alleged event of default was a material reason for its order to repossess plaintiff's car. See *Crosson v. Lancaster*, 207 Ga. App. 404, 405 (2), supra. However, assuming the contrary, we review the record to determine whether the trial court was correct in finding plaintiff in default for failing to pay a five percent penalty on a monthly payment Anchor Bank alleges accrued as a result of a delinquent monthly payment.

Plaintiff gave undisputed deposition testimony that the only time there was confusion over her timely payment under the loan agreement was when Anchor Bank closed it operations in Atlanta and gave her the wrong address for forwarding her payment. Plaintiff explained that she made her usual trip to Anchor Bank's Marietta Street office in early 1989 to tender her monthly car payment; that she then discovered that Anchor Bank had permanently closed its Marietta Street office and that she tendered her car payment (via mail) to another lending institution in response to a notice posted outside Anchor Bank's Marietta Street office. Plaintiff explained that Anchor Bank later notified her that the car payment was past due, that she owed a five percent late charge as a consequence of the delinquent payment and that all future payments should be mailed to Anchor Bank's agent in Chamblee, Georgia. Plaintiff testified that she thereafter posted all of her remaining payments under the loan agreement to the address in Chamblee given to her by Anchor Bank.

"If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." OCGA § 13-4-23. The loan agreement provides that payments must be made at Anchor Bank's Marietta Street office. Consequently, when Anchor Bank closed its Marietta Street office, it prevented plaintiff from delivering her payment in the manner required under the specific terms of the loan agreement. Consequently, plaintiff was not in default for failing to deliver the payment (Anchor Bank alleges was late) to the Marietta Street office within the time prescribed in the loan agreement. The trial court erred in finding that plaintiff was in default for failing to deliver a timely payment under the loan agreement.

The trial court erred in granting summary judgment in favor of Anchor Bank with regard to plaintiff's claim that no bona fide event of default existed authorizing repossession of her automobile.

4. In her third enumeration, plaintiff contends genuine issues of material fact remain as to her claim that Anchor Bank failed to exercise "good faith" as required by OCGA § 11-1-208.

The loan agreement contained a provision entitling Anchor Bank to accelerate upon the happening of any circumstance leading it to deem itself insecure. "OCGA § 11-1-208 provides that such a term 'shall be construed to mean that (the holder) shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.' OCGA § 11-1-201 (19) defines 'good faith' as 'honesty in fact in the conduct or transaction concerned.'

"On motion for summary judgment, the burden is on the movant to establish the absence of any material issue of fact. *Barber v. Threl-*

*keld Ford*, 199 Ga. App. 787, 788 (406 SE2d 249) (1991). The material issue [in the case sub judice] 'is not whether the loan was in fact insecure, but whether, in determining the loan insecure, [Anchor Bank] acted honestly, in good faith, and not arbitrarily or capriciously [when it ordered repossession of plaintiff's car].' *Ginn v. Citizens &c. Nat. Bank*, 145 Ga. App. 175, 177 (1) (243 SE2d 528) (1978)." *Crosson v. Lancaster*, 207 Ga. App. 404, 405 (4), supra. In the case sub judice, the evidence places Anchor Bank's good faith in issue by suggesting that it acted without checking the facts before ordering repossession of plaintiff's automobile. Consequently, the trial court erred in entering summary judgment as to plaintiff's claim against Anchor Bank for failing to act in "good faith" in repossessing plaintiff's automobile. Compare *First Bank of Savannah v. Kilpatrick-Smith Constr. Co.*, 153 Ga. App. 112 (264 SE2d 576); *Custom Panel Systems v. Bank of Hampton*, 143 Ga. App. 681 (239 SE2d 558).

5. We agree with plaintiff that genuine issues of material fact remain with regard to defendants' liability for conversion and trespass. Plaintiff's testimony indicates that her car was unlawfully seized (against her protest and sole right of possession) and held for five days. *Fidelity Nat. Bank v. Wood*, 189 Ga. App. 109 (1) (375 SE2d 228). Plaintiff also testified that certain items of personal property (i.e., magnetic recordings of her favorite gospel tunes, valuable receipts and papers, the vehicle's emissions decal and other unspecified items of personalty) were missing from her vehicle when she recovered it from Southern States. See *Builders Transport v. Hall*, 191 Ga. App. 889, 891 (2) (383 SE2d 341).

The trial court erred in granting summary judgment as to plaintiff's claim against defendants for trespass and conversion.

6. Plaintiff contends the trial court erred in granting summary judgment as to her claim for punitive damages.

" 'Negligence, even gross negligence, is inadequate to support a punitive damage award. Under OCGA § 51-12-5.1 (b), which is applicable . . . , it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. . . . There is general agreement that, because it lacks this element, mere negligence is not enough. . . .' (Citations and punctuation omitted.) *Tower Fin. Svcs. v. Smith*, 204 Ga. App. 910, 918 (5) (423 SE2d 257) (1992)." *Hillman v. Gen. Motors Acceptance Corp.*, 210 Ga. App. 837, 839 (437 SE2d 803). In the case sub judice, the actions of Carter and his associates may have verged on a breach of the peace and Anchor Bank may have been grossly negligent in failing to investigate the basis for their order to repossess plaintiff's automobile, but defendants' conduct was not so aggravating or outrageous such as to indicate spite or malice, or a fraudulent evil motive, or such a conscious and deliber-

ate disregard of plaintiff's interests so as to warrant punitive damages. See *Gaither v. BarclaysAmerican/Financial of Ga.*, 194 Ga. App. 188, 189 (390 SE2d 97). See also *Investment Securities Corp. v. Cole*, 186 Ga. 809, 810 (1) (199 SE 126). This conclusion is supported by undisputed evidence showing that Anchor Bank returned the collateral after plaintiff produced evidence that she had insured the vehicle during the term of the loan and plaintiff's testimony that Carter and his associates were not abusive or profane at the time of repossession. See *Evans v. Willis*, 212 Ga. App. 335, 337 (1a) (441 SE2d 770).

The trial court did not err in granting summary judgment as to plaintiff's claim for punitive damages.

7. For the reasons discussed in Division 6, "[t]he trial court did not err in granting summary judgment as to [plaintiff's] claim of intentional infliction of emotional distress. The conduct at issue does not meet either the requisite standards of outrageous or egregious conduct or of severity within the meaning of *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703 (409 SE2d 835); *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222, 225-226 (369 SE2d 541)." *Hyre v. Denise*, 214 Ga. App. 552, 555 (4) (449 SE2d 120). See also *Clark v. Gen. Motors Acceptance Corp.*, 185 Ga. App. 130, 133 (3) (363 SE2d 813).

8. In her final enumeration, plaintiff contends the trial court erred in granting summary judgment in favor of defendants Omni and Carter as to her claim under the Fair Debt Collection Practices Act, 15 USCA § 1692 et seq.

The trial court found defendants Omni and Carter not subject to liability under the Fair Debt Collection Practices Act because they were lawfully enforcing a "present right" under a security interest at the time of repossession. See *Jordan v. Kent Recovery Svcs.*, 731 FSupp. 652, 659. This finding was erroneous since genuine issues of material fact remain as to Anchor Bank's "present right" to seize plaintiff's vehicle, i.e., whether there existed a bona fide event of default justifying seizure of plaintiff's car. Consequently, the trial court erred in granting summary judgment as to plaintiff's claims against defendants Omni and Carter under the Fair Debt Collection Practices Act.

*Judgment affirmed in part and reversed in part. Motion to remand denied. Pope, C. J., and Smith, J., concur in the judgment only.*

DECIDED DECEMBER 5, 1994.

*Timothy W. Storm*, for appellant.
*Webb, Carlock, Copeland, Semler & Stair, Paul R. Vancil, Welch, Spell, Reemsnyder & Pless, Robert A. Burnett, Freeman &*

*Hawkins, B. Rose Miller, Warner S. Fox,* for appellees.