A95A2874. FLATEAU et al. v. REINHARDT, WHITLEY & WILMOT et al.
(469 SE2d 222)

BEASLEY, Chief Judge.

Tifton Heating & Cooling, Inc. (Tifton) and Edward Rhodes sued Al-Temp Services, Inc. (Al-Temp), Means, his wife, attorney Reinhardt, Reinhardt's law firm, and the Sheriff of Tift County. Plaintiffs seek damages against defendants for wrongful foreclosure and excessive levy, trespass, conversion, RICO violations, and abusive litigation. Plaintiffs appeal the trial court's grant of Reinhardt and his law firm's (the Reinhardt defendants) motion for summary judgment, as well as the denial of plaintiffs' motion for partial summary judgment.

Al-Temp was owned by Means and his wife. Tifton is owned by Rhodes. In 1985, a sales contract was executed under which the assets of Al-Temp were sold to Tifton. Means and his wife, Al-Temp, Tifton, and Rhodes were parties to the sales contract. Shortly after the sales contract was executed, Al-Temp was dissolved.

The total purchase price of $230,200.87 was paid by a $20,000

down payment with the remainder to be paid under a promissory note payable to Al-Temp in 120 consecutive monthly installments. The note and a security agreement gave Al-Temp a security interest in Tifton's accounts receivable, inventories of equipment (for sale), tools and equipment (for use), motor vehicles, and all proceeds and products of the business. The security agreement contained provisions stating that a default would occur if the note was not paid when due or if "the secured party fe[lt] insecure for any other reason whatsoever."

Means testified that in January 1990, Rhodes told him he was having cash flow problems and would like one week's extension for making the note payment due on January 15, and although he agreed to the extension he did not receive payment within the week.

Rhodes, on the other hand, testified that he told Means he would mail the January 15 payment to him on January 22, as it was his custom to send the note payments by mail; that he called Means on January 22 and told him that the check had been written; and that Means said he would pick it up but did not do so.

Means testified that after hearing that Rhodes had terminated his employees and was closing his business, he went to Tifton's office on January 22 and found the doors locked and the business closed. According to Means, the business' closing was confirmed by several employees who stated they had been asked to remain temporarily in order to wind up its affairs.

Means went to see his attorney, Reinhardt, concerned about the loss of easily transportable, untitled collateral. There was apparently a substantial quantity of collateral, including heavy equipment, so all of it was not easily transportable. Means and Reinhardt discussed past problems concerning Rhodes' maintenance and unauthorized disposition of collateral. A decision was made to file a petition for an immediate writ of possession, naming Al-Temp as the plaintiff and Tifton as the defendant. The petition contained the same description of the secured property as that set forth in the note and security agreement. Means executed an affidavit on January 23 and executed a bond for Al-Temp.

The writ was issued on January 23. The writ ordered the sheriff to levy on the personal property described in the note and security deed and, at the option of plaintiff, either surrender the property to the plaintiff for retention and disposition in accordance with OCGA Title 11 or advertise and sell it. Plaintiff elected to receive the property.

Reinhardt testified that Means accompanied him to the chambers of the judge and represented to the judge that the writ was being sought because of concerns about collateral rather than a default in the note payment. The judge was informed of the default because it

was relevant to the question of whether Means felt "insecure."

Reinhardt further testified that after the judge signed the writ, Reinhardt asked Means to allow him to attempt to contact Rhodes and resolve the matter, and he unhesitatingly agreed. Reinhardt arranged a meeting with Rhodes, but Rhodes cancelled it. Rhodes said he told Reinhardt on January 24 that the business was not closing, but he acknowledged that he cancelled the arranged meeting. Reinhardt then called Rhodes' attorney, who suggested that he contact Rhodes through an attorney who practices bankruptcy law and is a standing bankruptcy trustee. Reinhardt attempted to do so but was advised he was unavailable. Reinhardt and Means decided to file the petition for an immediate writ of possession with the clerk and obtain execution of the writ. That was done on January 25.

The sheriff testified that after Reinhardt and Means delivered the writ to him, he informed them that he had no facilities for storing the collateral and could only take control of it by securing the premises. He instructed them to arrange for a locksmith to meet him at Tifton's offices. The sheriff also instructed them to accompany him. He executed the levy personally, supervised the locksmith's changing of the locks, took possession of the keys, and retained possession of the collateral.

Tifton claims that, as a result of the levy, it was forced to leave construction sites and to default on contracts. Thereafter, Tifton sought relief under Chapter 11 of the United States Bankruptcy Code. On February 20, 1990, the bankruptcy court directed that the seized property be returned to Tifton.

The Reinhardt defendants moved for summary judgment as to their liability. Plaintiffs sought partial summary judgment on issues involving the liability of all defendants. The court granted the Reinhardt defendants' motion and denied plaintiffs' motion.

Plaintiffs appealed from the order granting the Reinhardt defendants' motion, although the notice of appeal was served on the attorneys for all defendants. In their enumeration of errors and appellate brief, plaintiffs contend that the court erred in denying their motion for partial summary judgment as well as in granting the Reinhardt defendants' motion for summary judgment.

Certificates of service show that plaintiffs' enumeration of errors and brief were not served on the attorney representing Means, and Means has not filed an appellate brief. We have addressed the issues concerning Means' liability without ordering or requesting that Means file a brief, because most of them are interrelated with the issues concerning the Reinhardt defendants' liability; they are resolved against the plaintiffs in any event.

1. Plaintiffs' primary argument is that Means and the Reinhardt defendants are subject to personal liability as agents acting on behalf

of a non-existent principal, in that Al-Temp, having been dissolved, did not legally exist on the date the petition for an immediate writ of possession was filed.

Plaintiffs have overlooked OCGA § 14-2-1408 (b). It authorizes the shareholders, directors, and officers of a corporation which has been voluntarily dissolved to take actions to protect any remedy, right or claim on behalf of the corporation, which actions may proceed in the corporate name. Compare *Gas Pump v. Gen. Cinema Beverages &c.*, 263 Ga. 583 (436 SE2d 207) (1993) (involving an administratively dissolved corporation).

2. Plaintiffs argue that they were entitled to partial summary judgment on the issue of whether Means and the Reinhardt defendants wrongfully declared a default and on the issue of whether the Reinhardt defendants are liable for wrongful foreclosure.

(a) Means wrongfully declared a default if he did not in good faith believe that the prospect of payment or performance was impaired. See OCGA § 11-1-208; *Crosson v. Lancaster*, 207 Ga. App. 404, 405 (4) (427 SE2d 864) (1993). Plaintiffs argue that they were entitled to summary judgment on this question but, at the very least, there is a material issue of fact on the question.

(b) A plaintiff's attorney is not liable to the defendant for bringing a suit if he acts in good faith and without knowledge of any malice on his client's part. *Williams v. Inman*, 1 Ga. App. 321, 324 (1) (57 SE 1009) (1907).

There is no evidence of any knowledge by the Reinhardt defendants of any malice on the part of Means. And the Reinhardt defendants have established that there is no evidence that they did not act in good faith. See *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991); compare *Crosson*, supra at 407.

3. On a variety of grounds, plaintiffs argue that the immediate writ of possession was void. We review these grounds, because the validity of the writ is relevant to various tort claims asserted by plaintiffs. See Division 4, infra.

(a) As argued by plaintiffs, "[t]he procedures for the obtaining of writs of immediate possession have been found constitutional but must be strictly adhered to." *Deutz-Allis Credit Corp. v. Phillips*, 183 Ga. App. 760, 762 (1) (360 SE2d 29) (1987).

(b) Plaintiffs argue that the judge issuing the writ acted without jurisdiction because there was no pending action. To the contrary, a petition for an immediate writ of possession is an "action" within the meaning of OCGA § 9-2-1 (1). Filing a foreclosure petition is not a jurisdictional prerequisite to a creditor's right to seek an immediate writ of possession. The statutory provisions governing an immediate writ *contemplate* the filing of a petition to foreclose the security interest. See OCGA § 44-14-261; *Deutz-Allis Credit Corp.*, supra; *Ward*

*v. Charles D. Hardwick Co.*, 156 Ga. App. 96 (274 SE2d 20) (1980). However, they do not *require* the filing of such a petition either before or after the filing of the petition for the writ.

Whenever the writ is granted, the petitioner has the option of having the sheriff surrender the secured property to the plaintiff for retention or disposition in accordance with Article 9 of Title 11. OCGA § 44-14-236. Under certain circumstances, Article 9 of Title 11 allows the secured party in possession of collateral after default to retain possession of the collateral in satisfaction of the obligation. OCGA § 11-9-505 (2). The secured party's exercise of this option after obtaining possession of the secured property would obviate the necessity for filing a foreclosure petition, although the defendant named in the writ could still make an appearance and file any legal or equitable defense or counterclaim. See OCGA § 44-14-267.

(c) There is no merit in plaintiffs' argument that the petition for the writ was defective on its face. It sought foreclosure of a security interest in personal property. It was supported by Means' sworn affidavit, in which he stated that the defendant named in the petition had defaulted on the note; that he had been advised by reliable sources and had knowledge that the business was closing; that, absent the writ, there was a possibility that Al-Temp would have trouble obtaining possession of the collateral; and that, because of the nature of the collateral, there was a substantial danger that any prior notice to named defendant would result in the security being sold or concealed. The facts stated in the affidavit, in conjunction with the facts alleged in the petition, were sufficient to show that it was within the power of the named defendant to "conceal, waste, encumber, convert, convey, or remove from the jurisdiction of the court the property which [was] the subject matter of the petition. . . ." OCGA § 44-14-262. This statute does require the allegations in support of the petition to be under oath, which was absent here, but this is an amendable defect. Cf. *C. E. Morgan Bldg. Prods. v. Safe-Lite Mfg.*, 244 Ga. 475 (260 SE2d 870) (1979).

There is no merit in plaintiffs' argument that the bond that was furnished pursuant to the requirements of OCGA § 44-14-263 was void. Although it named Al-Temp as the principal, it was executed by Means in effect as agent for Al-Temp. Means was thus personally liable on the bond. See *Dixie Drive It Yourself System v. Lewis*, 78 Ga. App. 236 (50 SE2d 843) (1948).

In the petition, Al-Temp requested that a hearing be scheduled and that summons issue requiring appearance by defendant as provided by OCGA § 44-14-232. The fact that the court did not issue a summons requiring the defendant's appearance at a hearing, or schedule a hearing, does not render the petition defective.

(d) Nor would any failure by the sheriff to follow statutory proce-

dures in levying on the property invalidate the writ.

4. Plaintiffs contend that, as a matter of law, they are entitled to recover damages against Means and the Reinhardt defendants for wrongful and excessive levy, trespass, and conversion. They argue that the levy was wrongful because it was made under a void writ, that the levy was excessive because it was made on property of a person other than the defendant named in the writ, and that a wrongful and excessive levy is a trespass as well as a conversion.

An attorney owes a duty to the adversary to refrain from tortious conduct. *Arthur Pew Constr. Co. v. First Nat. Bank of Atlanta*, 827 F2d 1488, 1493 (3) (11th Cir. 1987); see *Williams*, supra; see generally 7A CJS 185, Attorney and Client, § 142.

For reasons given in Division 3, the writ was not void. The record shows that the property described in the writ did not include any property other than that described in the security agreement. The sheriff testified that he controlled the levy on that property. This testimony was not controverted. Thus, the sheriff's seizure of property not described in the writ would not give rise to any claims against Means or the Reinhardt defendants. Compare *Williams*, supra; *McDougald v. Dougherty*, 12 Ga. 613 (1853).

5. In regard to their claim for abusive litigation, plaintiffs argue that the undisputed evidence shows that Means and the Reinhardt defendants acted with malice and without substantial justification in obtaining the writ of immediate possession. There is no evidence of such by the Reinhardt defendants. See OCGA § 51-7-80 (5) and (7). Any evidence that Means acted with malice and without substantial justification is disputed.

6. Finally, plaintiffs argue that they are entitled as a matter of law to recover damages from Means and the Reinhardt defendants for RICO violations, but the evidence is insufficient to support a finding that Means and the Reinhardt defendants engaged in, or conspired to engage in, a pattern of racketeering activity. See generally *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 262 (5) (447 SE2d 617) (1994).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 25, 1996 —
RECONSIDERATION DISMISSED FEBRUARY 13, 1996.

*William S. Stone*, for appellants.

*Martin, Snow, Grant & Napier, John T. McGoldrick, Jr., Walters, Davis, Meeks & Pujadas, W. Emory Walters, J. Converse*

*Bright*, for appellees.