**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A1714. ABI INVESTMENTS, LLC et al. v. FSG BANK, NATIONAL ASSOCIATION d/b/a DALTON WHITFIELD BANK.

MILLER, Judge.

FSGBank, National Association, d/b/a Dalton Whitfield Bank ("DWB") filed suit against ABI and ABI member/managers Alan S. Dover, Charles A. Edmondson, Joseph C. Hensley, Frank E. Jones, J. Ronald Knight, Tracey R. Newton, and Kenneth D. Warren (the "Individual Defendants") to recover the principal and interest due on a promissory note. DWB filed a motion for summary judgment, which the trial court granted. On appeal, ABI and the Individual Defendants contend that the trial court erred in granting summary judgment to DWB. We agree and reverse.

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and

whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law." (citations omitted) *Smith v. Atlantic Mutual Companies*, 283 Ga. App. 349 (641 SE2d 586) (2007).

So viewed, the record shows that in September 2008, ABI executed promissory note payable to DWB in the amount of $1 million (the "Note"). The purpose of the underlying loan was to purchase a subordinated notes of Appalachian Community Bank ("Appalachian Bank"). The principle sum was to be advanced on September 30, 2008, with the first payment due on December 31, 2008. Subsequent payments were due semi-annually thereafter on June 30th and December 31st. The unpaid balance of the loan was due and payable in September 2011.

The Note's default provision specifically defines certain instances of default. In relevant part, the default paragraph states: "I will be in default if any one or more of the following occur: . . . (5) I . . . become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); . . . (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you[.]" Upon default, the Note provides that DWB may demand immediate payment of all amounts due and owing under the Note. The

Individual Defendants executed the Note in their capacity as member/managers of ABI.

ABI began loan repayments according to schedule, making its first payment on December 31, 2008. In April of 2009 the Federal Deposit Insurance Corporation (FDIC) issued a cease and desist order to Appalachian Bank. On June 30, 2009, ABI made its second payment to DWB. In September 2009, representatives of DWB met with some of the Individual Defendants. During the meeting, no person said to DWB that ABI would not be able to perform under the Note as a result of the cease and desist order or for any other reason. In December 2009, after the closure of Appalachian Bank, ABI made its next scheduled payment on the Note.

On March 19, 2010, Appalachian Bank was closed by the FDIC. Only a few days later, DWB informed ABI and the Individual Defendants, that, pursuant to the terms of the Note and OCGA § 11-1-28, all sums under the Note were immediately due and owing. Even though ABI was current on all its semi-annual payments, and no payments were due at the time that the Note was accelerated, DWB cited the closure of Appalachian Bank as an event which caused it to believe it would have difficulty collecting the amount owed.

3

In April 2010, DWB filed its complaint seeking judgments against ABI and the Individual Defendants in the principal amount of $924,995.36, plus interest of $8,427.73 and prejudgment interest. The trial court granted DWB's motion for summary judgment, finding that OCGA § 11-1-208 applied to the default provision of the note, and, as required by that statute, DWB had produced evidence supporting a good faith belief that the prospect of payment was impaired.[1]

On appeal, ABI and the Individual Defendants contend that the trial court erred by granting summary judgment in DWB's favor. For the reasons that follow, we agree.

When a promissory note, on its face, shows that it is past due and in *default*, the plaintiff establishes a prima facie right to judgment, and the burden shifts to the borrower to establish an affirmative defense. *Speir v. Nicholson*, 202 Ga. App. 405, 408 (2) (414 SE2d 533) (1992).

In this case, DWB failed to establish a prima facie right to judgment. Notably, the default subsection of the Note provides that a default will occur if ABI takes action or fails to take action which causes DWB to believe that ABI would have

---

[1]The trial court subsequently entered an amended order excluding Jones from the trial court's entry of summary judgment because he had properly filed a notice of bankruptcy and received a bankruptcy discharge.

4

difficulty collecting the amount owed. Here, the undisputed evidence shows that, at the time that DWB declared default, ABI was current on its payments. Moreover, DWB has failed to point to record evidence showing that ABI did or failed to do something that triggered the default provision.

Instead, DWB relies upon the fact that Appalachian Bank was closed by the FDIC and went into receivership. Appalachian Bank, however, is a distinct legal entity from ABI. See *Augusta Tennis Club v. Richmond County*, 219 Ga.App. 94, 95 (1) (464 SE2d 228) (1980) (although two corporations may have common shareholders, officers, and directors, each corporation is a legal entity retaining its separate and independent character). Accordingly, the actions of Appalachian Bank could not be attributable to ABI, notwithstanding the fact that they shared common members or directors. *Id.* at 95 (1).

Further, DWB argues that the call to accelerate payment falls under OCGA § 11-1-208. In relevant part, OCGA § 11-1-208 states:

> A term providing that one party . . . may accelerate payment or performance . . . "at will" or "when he deems himself insecure" or in other words of similar import shall be construed to mean that he shall have the power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of

5

establishing lack of good faith is on the party against whom the power has been exercised.

Whether a party acted in good faith under OCGA § 11-1-208 is a question of fact for the jury. *Crosson v. Lancaster*, 207 Ga. App. 404, 406 (427 SE2d 864) (1993). Here, the evidence showed that ABI is a distinct legal entity apart from Appalachian Bank, that ABI was current on its payments at the time DWB declared default, and that DWB accelerated the note only a few days after Appalachian Bank closed without any further meetings with ABI. Accordingly, DWB has failed to demonstrate that there is no question of fact regarding whether it acted in good faith. See *Id*. at 406 (material issue of fact created by conflicting evidence as to whether bank acted in good faith or in an arbitrary or capricious manner when it accelerated loans to "outstanding" customer with only occasional late payments). Under these circumstances, good faith is a question of fact for the jury.

As a result, the trial court erred in concluding that DWB was entitled to declare default as a matter of law against ABI. Accordingly, we reverse.

*Judgment reversed. Barnes, P.J. and Ray, J. concur.*